**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JAMES M. SINGER,             )
                                 )
         Plaintiff,        )
                                 )
     v.                      )
                                 )     Civil Action No. 16-579
DAVID HECKLER, Chairman of  )
the Pennsylvania Child Protection  )
Task Force, *et al.,*         )
                                 )
        Defendants.    )

## MEMORANDUM OPINION

### I.    Introduction

This civil rights lawsuit was commenced on May 10, 2016 by James M. Singer ("plaintiff"), an individual who formerly practiced as a licensed psychologist. On February 14, 2017, this court granted plaintiff's renewed motion for leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (ECF No. 23.) This court is obligated under that same statute to dismiss any case in which the complaint asserts claims that are frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2)(B). While recognizing that courts have a special obligation to construe a *pro se* litigant's pleadings liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011), *as amended* (Sept. 19, 2011), this court nevertheless concludes that plaintiff's complaint is subject to dismissal, with prejudice, on all the grounds identified in §1915(e)(2)(B).

## II.    Factual and Procedural Background

In April 1989, the Pennsylvania Bureau of Profession and Occupational Affairs (the "Bureau"), State Board of Psychology (the "Board") instituted formal disciplinary proceedings against plaintiff which culminated in an indefinite suspension of his license.  *See generally Singer v. Bd. of Prof'l and Occupational Affairs, State Bd. of Psychology*, 633 A.2d 246 (Pa. Commw. Ct. 1993).  Plaintiff has consistently maintained that these proceedings were initiated in retaliation for reports he made about suspected child abuse.  To that end, he has filed at least eight prior lawsuits in which he seeks redress for perceived injustices stemming from the Board's prosecution and the resulting suspension of his license.  *See Singer v. Lewis*, No. 1:91–CV–00859 (M.D. Pa. filed July 2, 1991) (*"Singer I"*); *Singer v. Mitchell*, No. 3:94– CV–01761 (M.D. Pa. filed Oct. 27, 1994) ("*Singer II*"); *Singer v. Mitchell*, No. 4:03–CV–01085 (M.D. Pa. filed July 2, 2003) ("*Singer III*"); *Singer v. Dunnewold*, No. 3:06–CV–01412 (M.D. Pa. filed July 19, 2006) (*"Singer IV"*); *Singer v. Bowman*, No. 1:08–CV–01999 (M.D. Pa. filed Nov. 4, 2008) ("*Singer V*"); *Singer v. Bureau of Prof'l & Occupational Affairs*, No. 3:12–CV–00527 (M.D. Pa. filed Mar. 23, 2012) ("*Singer VI*"); *Singer v. Bureau of Prof'l and Occupational Affairs*, No. 3:CV–13–3059 (M.D. Pa. filed Dec. 19, 2013) ("*Singer VII*"); *Singer v. Heckler*, No. CV 14-1598, 2015 WL 8992438 (W.D. Pa. Dec. 16, 2015) ("*Singer VIII*"), *reconsideration denied*, No. CV 14-1598, 2016 WL 397468 (W.D. Pa. Feb. 2, 2016).  The court in *Singer VII* observed that, in each of his lawsuits:

> [plaintiff] has alleged constitutional violations related to the suspension of his license to practice psychology in 1992, including the investigation and prosecution of that administrative action before the Board, his unsuccessful attempt to obtain an unconditional reinstatement of his license, and his unsuccessful attempt to initiate an official investigation into and criminal charges against an ever–growing list of alleged co–conspirators intent on retaliating against him for reporting suspected child abuse twenty–five years ago.

*Singer VII*, 2014 WL 2048159 at *8.

2

In this, his ninth civil action, plaintiff has sued nine defendants:

(i)      David Heckler ("Heckler"), Chairman of the Pennsylvania Child
         Protection Task Force,

(ii)     the Bureau,

(iii)    the Board,

(iv)     the Pennsylvania Office of Attorney General ("OAG"),

(v)      Peter Marks, Esq. ("Marks"), Executive Deputy Chief Counsel for the
         Pennsylvania Department of State ("Department of State"),

(vi)     Ruth Dunnewold, Esq. ("Dunnewold"), Senior Deputy General Counsel
         for the Department of State,

(vii)    Judith Schulder, Esq. ("Schulder"), counsel for the Board,

(viii)   David Tyler ("Tyler"), Director of Governmental Affairs, Legislative
         Liaison, and Chief Operating Officer for the OAG, and formerly the
         Executive Director of the Pennsylvania State House Judiciary Committee,
         and

(ix)     Sandra Stoner, Esq. ("Stoner"), Deputy Attorney General for the
         Commonwealth of Pennsylvania.

In his complaint, plaintiff alleges "recent continuing violations related [to] ongoing

misconduct by all officials in their individual and professional capacities under color of law,"

including "violations to retaliate against Plaintiff, or obstruct justice, based solely on Singer's

mandated report of suspected child abuse and his subsequent refusal to admit any wrongdoing in

the matter." (Compl. ¶1, ECF No. 2.) Plaintiff claims that "[t]hese violations of official

oppression, alteration and/or fabrication of written evidence, [o]bstructing [a]dministration of

[l]aw or other [g]overmental [f]unctions, and perjury by the government" have violated his civil

rights. (*Id.* ¶2.) His complaint purports to assert five causes of action consisting of claims

against Tyler (Count I), Marks (Count II), Stoner (Count III), Schulder (Count IV)[1], and

---

[1] Although inadvertently designated "Count V," this claim is numerically plaintiff's fourth and will be construed
herein as "Count IV."

Dunnewold (Count V).  None of the five counts are specifically directed against Heckler, the Bureau, the Board, or the OAG.

### III.    Standard of Review

Pursuant to 28 U.S.C. §1915(e)(2)(B) and §1915A(a), district courts are statutorily required to review the complaint of a plaintiff proceeding *in forma pauperis* prior to service of process.[2]  In doing so, the court must evaluate whether the complaint is (i) frivolous or malicious, (ii) fails to state a claim upon which relief may be granted, or (iii) seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §1915(e)(2)(B).  If "at any time" the court determines that the action meets any of those criteria, the court "shall dismiss the case. . . ." *Id.*

A complaint is frivolous where it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Adams v. U.S. States Treasury Sec'y*, No. 16-1888, 2016 WL 4056038, at *1 (3d Cir. July 29, 2016).  "Repetitious litigation of virtually identical causes of action may be dismissed under § 1915 as frivolous or malicious."  *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 589 (W.D. Pa. 2008) (citing *McWilliams v. Colorado*, 121 F.3d 573, 574 (10th Cir.1997)).

The legal standard for dismissing a complaint for failure to state a claim pursuant to §1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions.  *Small v. Herrera*, 52 F. Supp. 3d 684, 686-87 (D. Del. 2014) (citing

---

[2] The screening provisions of 28 U.S.C. §1915(e)(2)(B) apply to both prisoner and non-prisoner plaintiffs who proceed *in forma pauperis*.  *See Atamian v. Burns,* 236 F. App'x 753, 755 (3d Cir. May 24, 2007) ("[T]he provisions of § 1915(e) apply to all in forma pauperis complaints, not simply those filed by prisoners."); *Grayson v. Mayview State Hosp.,* 293 F.3d 103, 114 n. 19 (3d Cir. 2002)(concluding that non-prisoner indigent plaintiffs are "clearly within the scope of § 1915(e)(2)"); *see also Plonka v. Borough of Susquehanna*, No. 3:17-CV-00262, 2017 WL 1250792, at *2 (M.D. Pa. Apr. 5, 2017) (applying §1915(e)(2)(B) screening provisions to non-prisoner's complaint); *Cohen v. Moore*, No. CV 16-661, 2016 WL 7474815, at *1 (W.D. Pa. Dec. 29, 2016) (same).

*Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B))). A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." *Id*. at 555-56. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

In this case, plaintiff is proceeding without the benefit of legal counsel. Pro se plaintiffs are held to a less stringent standard than individuals who are represented by counsel. *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("[P]ro se litigants are held to a lesser pleading standard than other parties."). Nevertheless, for Rule 12(b)(6) purposes, "a *pro se* complaint must still 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Salley v. Sec'y Pa. Dep't of Corr.*, 565 F. App'x 77, 81 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678); *see Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010)

("[A] litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se.").

## IV.    Discussion

The complaint in this case is difficult to interpret, as it is replete with disjointed averments, conclusory allegations, and factual non sequiturs. Vague references are made throughout the complaint to past events lacking factual context or to documents that are neither appended to, nor adequately described in, the pleading.

Nevertheless, as a general matter, it appears that plaintiff is asserting claims under 42 U.S.C. §1983 to redress violations of his federal civil rights. Plaintiff also makes a passing reference to alleged violations of 42 U.S.C. §1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.* (*see* Compl. ¶2).[3] Underpinning his claims are generalized allegations of retaliation, "official oppression," alteration or fabrication of evidence, perjury, obstruction of justice, harassment, and similar wrongdoing in connection with the Board's license suspension proceedings and thereafter, when plaintiff sought redress against his alleged retaliators. (*See generally* Compl. at 1-2, ¶¶1-2, 4.) In essence, plaintiff faults defendants for suppressing, misrepresenting, or otherwise failing to act upon evidence of unlawful or criminal misconduct, as allegedly "confirmed" in an August 6, 1997 memorandum compiled by Pennsylvania State Police Lieutenant Ivan H. Hoover ("Lt. Hoover").[4] Having construed the complaint liberally and

---

[3] Elsewhere in his complaint, plaintiff alludes to possible criminal violations, suggesting other potential, but undeveloped, theories of recovery. To the extent plaintiff seeks to utilize this civil litigation to compel a criminal prosecution or impose criminal liability on any of the named defendants, his request exceeds the subject matter jurisdiction of this court.

[4] Lt. Hoover's memorandum is not part of the record in this case, but it was previously submitted to the court and made part of the record in *Singer VIII*. Therein, this court observed that the memorandum is "an unofficial compilation of plaintiff's allegations and supporting evidence concerning the alleged improprieties in the Board's investigation and prosecution; it is not an official PSP investigative report." *Singer VIII,* 2015 WL 8992438, at *2 n.2 (W.D. Pa. Dec. 16, 2015). The court quoted relevant portions of the memorandum, to wit:

in the light most favorable to plaintiff, the court finds that plaintiff's claims are frivolous or otherwise non-actionable for the following reasons.

*A. Plaintiff's Claims Under 42 U.S.C. §1981 and Title VII*

To begin, any claims that plaintiff may be asserting under Title VII or 42 U.S.C. §1981 are untenable in the context of this case. Section 1981 precludes discrimination because of race in the making and enforcement of contracts, an issue not implicated here. *See Douglas v. Nesbit,* No. 1:16-cv-01836, 2017 WL 1021680, at *4 (M.D. Pa. Mar. 16, 2017) (citing *Rivers v. Roadway Exp., Inc.,* 511 U.S. 298, 302 (1994)); *White v. Cmty. Care, Inc.,* No. CIV.A. 07-1507, 2008 WL 5216569, at *7 (W.D. Pa. Dec. 11, 2008).

"Title VII of the Civil Rights Act of 1964 forbids employment discrimination based on race, color, religion, sex, or national origin, and its anti-retaliation provision forbids discrimination against an employee or job applicant who, *inter alia*, has made a charge, testified,

---

[ ] Mr. Singer is alleging that the investigation and prosecution for his case was biased. That perjury and exculpatory evidence was ignored by the Prosecutor, John D. Kelly...He alleges that other officials within the Department of State[ ] were aware of problems with the prosecution but did not intervene. That there were violations of the Pennsylvania Crimes Code, Title 18, including Perjury, Sec. #4902; Unsworn Falsification to Authorities, Sec # 4904; Tampering with or Fabricating Physical Evidence, Sec. #4910; Obstructing Administration of Law or other Governmental Functions, Sec. #5101; and Official Oppression, Sec. #5301. Mr. Singer advises that he and others, including State Representatives, Senators, and Congressmen, have requested an investigation of the manner in which his case was prosecuted. Among the Agencies contacted were the U.S. Attorney General, Pennsylvania Attorney General, Pennsylvania Inspector General, and the Dauphin County District Attorney's Office. To date, a full inquiry has not been conducted.

[ ] Mr. Singer contacted this officer requesting an inquiry by the Pennsylvania State Police on June 13, 1996. Mr. Singer and this officer are personally acquainted. Mr. Singer was informed that due to the complexity of the case, this officer would review materials he presented and attempt to summarize the events and allegations. Once done, the summary would be presented to the Department to establish if a criminal case existed and if the Pennsylvania State Police would pursue an investigation.

[ ] Here–in is a summary of the prosecution of Mr. Singer by the Department of State, Bureau of Professional and Occupational Affairs, State Board of Psychology. Some documents which appear to support Mr. Singer's claims are attached. Other documents and testimony from the hearing are available for review.

2015 WL 8992438, at *2 n.2 (citation omitted).

or participated in a Title VII proceeding or investigation." *White,* 2008 WL 5216569, at *7

(citing *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 59 (2006)); *see also*

42 U.S.C. § 2000e–3(a). Because plaintiff was never in an employment relationship with any of

the defendants named in this case, Title VII is facially inapplicable.

In short, the complaint does not state a plausible violation of §1981 or Title VII.

Consequently, any claims grounded upon those statutes must be dismissed.

### B. Plaintiff's §1983 Claim Against the OAG

Plaintiff has also sued under 42 U.S.C. §1983. In order to state a viable §1983 claim, he

must allege "the violation of a right secured by the Constitution or laws of the United States" and

"that the alleged deprivation was committed or caused by a person acting under color of state

law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

One of the entities plaintiff has sued in this case is the Pennsylvania Office of Attorney

General (previously referred to as "OAG"). It is well established that, by virtue of Eleventh

Amendment immunity, neither the Commonwealth of Pennsylvania, nor any entity that is an

"arm" of the Commonwealth, can be subject to civil rights liability in federal court. *See Will v.

Michigan Dept. of State Police,* 491 U.S. 58 (1989) (holding that an entity with Eleventh

Amendment immunity is not a "person" within the meaning of § 1983). To determine whether a

state agency is entitled to Eleventh Amendment immunity, federal courts consider: whether the

state would be responsible for the payment of any judgment rendered against the agency; the

source of the agency's funding; and the degree of autonomy enjoyed by the agency, as well as

other similar factors. *See Bolden v. Southeastern Pa. Transp. Auth*., 953 F.2d 807, 818 (3d Cir.

1991).

Pursuant to this inquiry, the OAG is an arm of the Commonwealth and, therefore, exempt from §1983 liability.[5] *See Folk v. Med.*, No. 3:CV-13-474, 2016 WL 4493856, at *3 (M.D. Pa. Aug. 24, 2016) (holding that the OAG is not a "person" for purposes of §1983 because the OAG receives all of its funding from the state and does not enjoy any measure of autonomy, and payment of any judgment rendered against the OAG would have to be paid out of the state treasury); *Melendez v. Drug Task Force of the Harrisburg Police Dep't*, No. 1:14-CV-00012, 2015 WL 1333284, at *2 (M.D. Pa. Mar. 25, 2015) ("It is beyond doubt that the Pennsylvania Office of the Attorney General is not a 'person' within the meaning of Section 1983, so it cannot be sued under that statute.") (citing *Wattie–Bey v. Attorney Gen. Office*, 424 F. App'x 95, 97–98 (3d Cir. 2011)). Accordingly, plaintiff's claim against the OAG will be dismissed.

### C. *Plaintiff's §1983 Claims Against Tyler, Marks, Stoner, Schulder, and Dunnewold*

#### 1. Failure to Plead a Constitutional Violation

In Counts I through V of the complaint, plaintiff purports to assert §1983 claims respectively against Tyler, Marks, Stoner, Schulder, and Dunnewold. Assuming that each of these individuals acted under color of state law for purposes of §1983, the claims against them still fail because plaintiff did not plead conduct on the defendants' part that could plausibly amount to a violation of his rights under federal law.

In Count I of the complaint, plaintiff alleges that Tyler, while employed as the Executive Director of the Pennsylvania State House Judiciary Committee, failed to fulfill a promise he made on July 13, 2012 to "look into" plaintiff's situation, investigate the OAG's involvement in "the matter," and report back to plaintiff. (Compl. ¶¶32-33.) Plaintiff apparently pressed Tyler

---

[5] The same is likely true for the Pennsylvania Bureau of Professional and Occupational Affairs, an entity which appears to be a sub-unit of the Pennsylvania Department of State. As discussed herein, however, plaintiff's claims against the Bureau also fail independently on separate grounds.

for further action when Tyler became Director of Governmental Affairs, Legislative Liaison, and Chief Operating Officer for the OAG. Plaintiff claims that, on January 14, 2014, Tyler stated in a written communication that he had "only been in the OAG for one year" and he "demanded that [plaintiff] apologize for Tyler's obstruction of justice and his effort to mislead [plaintiff] and others." (*Id.* ¶¶34-35.) According to plaintiff, "Tyler tried to mislead [him]" by implying that he had "never received any documentation of criminal violations by [the] government" prior to joining the OAG's office. (*Id.* ¶34.)

In Count II, plaintiff faults Marks, the Executive Deputy Chief Counsel for the Pennsylvania Department of State, for a written comment that Marks made on November 6, 2006, to the effect that none of the charges that had been filed against plaintiff in his administrative licensing proceedings were related to plaintiff's prior reports of child abuse. (Compl. ¶42.) Plaintiff contends that this misinformation was "contrary to complaints filed by the Plaintiff Singer, Psychology board prosecutor, and also State Police Lt. Hoover, . . . ." (*Id.* ¶45.) The context of plaintiff's allegations suggests that Mark's written comment was made in the course of appellate proceedings in an alleged attempt to deceive the judges of the Third Circuit Court of Appeals. (*Id.* ¶¶41-45.)

In Count III, plaintiff avers that Stoner, while employed as Deputy Attorney General, made similar misrepresentations to the effect that the Board's retaliatory prosecution of plaintiff had nothing to do with his prior reports of child abuse. (Compl. ¶51.) Stoner's misrepresentations allegedly occurred during the course of oral arguments which were held in 1997 before the Third Circuit Court of Appeals. (*Id.*)

In Count IV, plaintiff alleges that Schulder, while acting as counsel for the Board, reviewed Lt. Hoover's report, which consisted of "hundreds of pages of evidence" and "a

summary of over 30 pages." (Compl. ¶66.) Instead of reviewing the "critical violations" outlined in the report, (*id.*), Schulder allegedly mischaracterized the report as "merely '. . . letters involving the State Police,'" (*id.*) -- conduct that plaintiff construes as "fraudulent concealment of criminal evidence" and possibly an "illegal cover up of criminal violations" that constitutes an "obstruction of justice." (*Id.* ¶68.) From context, it is clear that Schuler's actions occurred at some point prior to February 10, 2006, because another individual (a "Dr. Kaushall") allegedly wrote a letter to the governor on that date that was critical of the manner in which Schulder had mischaracterized Lt. Hoover's report. (*Id.* ¶67.)

In Count V of the complaint, plaintiff asserts a claim against Dunnewold, Senior Deputy General Counsel for the Pennsylvania Department of State, based on letters she wrote in 2001 and 2006. (Compl. ¶¶77-78.) In January 2001, Dunnewold allegedly wrote a letter "with [or] for" the Deputy Commissioner of the Bureau of Professional and Occupational Affairs in which she opined that: "the Commonwealth's prosecution of [plaintiff] was neither wrongful ***nor did it go too far.*** It was a **legitimate** disciplinary action . . . regardless of Lieutenant Hoover's entire report[.]" (*Id.* ¶82 (emphasis in the original).) Plaintiff claims that this letter made "misleading and invalid conclusions about Lieutenant Hoover's 'entire report.'" (*Id.* ¶83.)

Years later, on March 13, 2006, Dunnewold allegedly wrote another letter in which she partially quoted her previous 2001 letter, stating, "the Commonwealth's prosecution of [plaintiff] was neither wrongful ***nor did it go too far.***" (Compl. ¶84 (emphasis in the original).) Plaintiff claims that Dunnewold "conveniently deleted" the next sentence from her 2001 letter, which included a reference to Lt. Hoover's report. (*Id.*) Dunnewold's 2006 letter further stated that, "although Dr. Singer has repeatedly asserted to others that there have been criminal violations by state officials, official oppression, perjury and fabricated evidence . . . at no point has he

provided any such information or evidence to support it, to any entity that might be able to look into his allegations." (*Id.* ¶78.) Plaintiff contends that Dunnewold's 2006 letter "deliberately deleted" any direct reference to "Lieutenant Hoover's entire report" so that "she could claim that these crimes of 'official oppression' and 'perjury' (taken directly from Lt. Hoover's report) were never confirmed in writing, as if these violations never existed, as if[ ] there never was never [sic] a report in the first place, and as if Singer never requested anyone to investigate." (*Id.* ¶85.) Plaintiff construes Dunnewold's conduct as an attempt to "cover up" the crimes against him and "[make] it appear that Singer fabricated these violations . . . , which is lible [sic]." (*Id.*¶89.) He interprets Dunnewold's letters as "obvious smoking guns to cover up criminal (possible RICO) violations." (*Id.* ¶92.)

Plaintiff avers that the misrepresentations of Stoner, Schulder, and Dunnewold, like those of Marks', were "contrary to complaints filed by the Plaintiff Singer, [the] Psychology Board prosecutor, and also State Police Lt. Hoover, . . . ." (Compl. ¶¶57, 71, and 94.) He claims that each defendant's actions "directly resulted in the denial of [his] license to practice psychology in the Commonwealth of Pennsylvania, which should be fully restored with a clear record." (*Id.* ¶¶36, 46, 58, 72, and 95.)

Plaintiff's claims against Tyler, Marks, Stoner, Schulder, and Dunnewold are insufficient to state a basis for relief under §1983. Nowhere in the complaint does plaintiff even identify – much less plead -- a specific federal right, whether statutory or constitutional, that was violated by the defendants' alleged misconduct. Assuming for the sake of argument that plaintiff is attempting to invoke his rights under the First or Fourteenth Amendments, no viable claim has been stated.

In order to plead a retaliation claim under the First Amendment, plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir.2003)). Here, plaintiff's averments do not plausibly establish that Tyler, Marks, Stoner, Schulder, or Dunnewold took retaliatory action against plaintiff as a result of his constitutionally protected conduct. To the extent plaintiff faults the defendants for suppressing, ignoring, or otherwise failing to act upon his complaints of wrongdoing (as outlined in Lt. Hoover's report), plaintiff failed to allege a First Amendment violation, which generally requires affirmative retaliatory conduct. *See L.H. v. Pittston Area School Dist.*, 130 F. Supp. 3d 918 (M.D. Pa. 2015) ("[A] failure to act on a complaint is not a retaliatory or adverse action sufficient to sustain a First Amendment retaliation claim.") (citing *Monn v. Gettysburg Area Sch. Dist.*, Civil No. 1:12–CV–2085, 2013 WL 1345501, at *4–5 (M.D. Pa. Apr. 2, 2013), *aff'd*, 553 F. App'x 120 (3d Cir. 2014)), *aff'd* 666 F. App'x 213 (3d Cir. 2016). In addition, plaintiff cannot establish a First Amendment violation based upon the allegedly misleading or untruthful statements attributed to Tyler, Marks, Stoner, Schulder, or Dunnewold because none of the challenged statements would be sufficient to deter a person of ordinary firmness from exercising his constitutional rights. The allegations in the complaint are also insufficient to establish the requisite causal nexus between constitutionally protected speech and the allegedly retaliatory conduct.

To the extent plaintiff is attempting to assert violations of his Fourteenth Amendment due process rights, the complaint falls short. No procedural due process claim was stated because the complaint fails to allege the defendants' personal involvement in depriving plaintiff of a

constitutionally protected liberty or property interest. *See Mulholland v. Government Cty. of Berks, Pa.,* 706 F.3d 227, 238 (3d Cir. 2013) ("'To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law.'") (quoting *Hill v. Borough of Kutztown,* 455 F.3d 225, 233-34 (3d Cir. 2006)) (additional internal quotation marks omitted); *see also Valdez v. Danberg*, 576 F. App'x 97, 100 (3d Cir. 2014) ("It is well–established that an individual government defendant in an action under § 1983 must have had some personal involvement in the alleged wrongdoing to be held liable.") (citing *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)). Plaintiff's conclusory averments that the defendants' actions somehow "directly" resulted in the "denial" of his professional license are facially implausible, since all the challenged misconduct occurred well after plaintiff's license was suspended. Moreover, plaintiff failed to allege facts showing that the "procedural due process" available to him was constitutionally deficient.

For similar reasons, plaintiff failed to plead a viable substantive due process violation. To establish a substantive due process claim under § 1983, a plaintiff must show that the government's deprivation of a constitutionally protected interest "shocks the conscience." *See Connection Training Serv. v. City of Phila*., 358 F. App'x 315, 319 (3d Cir. 2009). As noted, plaintiff's averments do not plausibly implicate Tyler, Marks, Stoner, Schulder, or Dunnewold in the deprivation of plaintiff's professional license, which occurred in 1992. In addition, however, plaintiff failed to allege actions on the part of any defendant that could plausibly constitute "conscience-shocking" behavior.

To the extent plaintiff would claim that his equal protection rights were violated, again, no claim was stated. To assert a selective enforcement claim, a plaintiff must demonstrate "'(1) that he was treated differently from other similarly situated individuals, and (2) that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor . . . or to prevent the exercise of a fundamental right.'" *Suber v. Wright*, 574 F. App'x 207, 211 (3d Cir. 2014) (quoting *Dique v. New Jersey State Police*, 603 F.3d 181, 184 n.5 (3d Cir. 2010)). The averments in the complaint do not plausibly establish that Tyler, Marks, Stoner, Schulder, or Dunnewold ever enforced laws against plaintiff. The only body to have done so is the Board, and plaintiff's claim against that entity is addressed separately, *infra*.

In sum, even if accepted as true, none of the misconduct alleged in the complaint arises to the level of a constitutional violation. Because no §1983 claim was stated, Counts I through V must be dismissed.

## 2. Statute of Limitations

The claims in Counts I through V are also subject to dismissal on statute-of-limitations grounds.[6] For §1983 actions brought in federal courts within the Commonwealth of Pennsylvania, the applicable statute of limitations period is two years. *Fitzgerald v. Larson*, 769 F.2d 160, 162 (3d Cir. 1985) ("[T]he two–year Pennsylvania limitation for personal injury actions of 42 Pa. Const. Stat. Ann. § 5524 governs all § 1983 actions brought in Pennsylvania.") (citing decisions). The date when a civil rights action accrues is a matter of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). A claim accrues when the plaintiff becomes aware, or should have become aware, of both the fact of the injury and its causal connection to the defendant. *See*

---

[6] "[T]he law of this Circuit (the so–called "Third Circuit Rule") permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (quoting *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir.1975)).

*Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980) (it is the wrongful act that triggers the start of the statute of limitations period); *Keystone Ins. Co. v. Houghton*, 863 F.2d 1125, 1127 (3d Cir. 1988) (a federal cause of action accrues when the plaintiff is aware, or should be aware, of the existence of and source of injury, not when the potential claimant knows or should know that the injury constitutes a legal wrong).

Plaintiff initiated this lawsuit on May 10, 2016 (*see* ECF No. 1). Therefore, any cause of action accruing prior to May 10, 2014 is time-barred.

As the foregoing discussion illustrates, all the acts upon which Counts I through V are premised occurred prior to May 10, 2014. Plaintiff's claims against Tyler are grounded upon an allegedly false promise made in July 2012 and an allegedly misleading statement that he wrote in January 2014. Plaintiff's claims against Marks are based on a statement Marks wrote in November 2006. The claims against Stoner are predicated on statements made in 1997 to judges sitting on the Third Circuit Court of Appeals. Plaintiff's claims against Schulder are based on statements made at some point prior to February 10, 2006. Plaintiff's claims against Dunnewold are predicated on letters she allegedly wrote in 2001 and 2006. Because all these actions occurred outside of the two-year window that predated the filing of this civil action, plaintiff's claims are time-barred.

Plaintiff's attempt to circumvent this result by invoking the "continuing violation" doctrine is unavailing. "The continuing violations doctrine is an 'equitable exception to the timely filing requirement.'" *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir.2001) (quoting *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 (3d Cir.1995)). "'[W]hen a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant

relief from the earlier related acts that would otherwise be time barred.'" *Cowell*, 263 F.3d at 292 (quoting *Brenner v. Local* 514, 927 F.2d 1283, 1295 (3d Cir.1991)).

In his complaint, plaintiff alludes to "recent continuing violations related [to] on going [sic] misconduct by all officials," (Compl. ¶1), but he fails to plead specific factual content to support the existence of a continuing violation. His conclusory averment that "[t]here are additional recent continuing violations," (Compl. ¶14), is insufficient. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (courts undertaking a Rule 12(b)(6) review disregard legal conclusions). His reference to "ongoing violations by the Pennsylvania Office of the Attorneys General," (Compl. ¶ 16), is similarly conclusory and does not personally implicate any of the named defendants in continued wrongdoing. His averment of "recent continuing violations by David Tyler on January 14, 2014 and others," (Compl. ¶9), is also insufficient. First, Tyler's alleged conduct on January 14, 2014 does not constitute a violation of federal law for the reasons previously discussed; second, the conduct occurred outside of the applicable two-year statute of limitations period.[7] Elsewhere in the complaint, plaintiff alludes to "[r]ecent efforts . . . by government, to coerce Singer in 2010 to cover up criminal violations by government, and [the] recent refusal by the AG to investigate criminal violations." (Compl. ¶28.) Contrary to plaintiff's averment, these alleged developments are not "continuing

---

[7] Plaintiff appears to be operating under the mistaken assumption that his present complaint relates back to January 12, 2016, because he filed a substantially similar iteration of his pleading around that same time (actually, January 13, 2016) in *Singer VIII. See Singer v. Heckler,* Case No. 14-cv-1598 (W.D. Pa.), "Amended Complaint " (ECF No. 28). This court previously explained that:

> [i]n *Singer VIII*, this court refused to recognize the "Amended Complaint" filed on January 13, 2016 as a valid and operative pleading. The court's refusal in this regard was justified by the fact that: (i) plaintiff had not sought or obtained leave to amend his pleading; (ii) plaintiff's filing of the "Amended Complaint" was procedurally inappropriate in light of the court's prior order dismissing the lawsuit and closing the case; and (iii) any request by plaintiff for leave to amend would have been denied on grounds of futility, undue delay, and/or prejudice. In short, plaintiff did not validly amend his pleading in *Singer VIII* when he filed his "Amended Complaint" on January 13, 2016, and he is mistaken in assuming otherwise."

(Mem. Op. dated Oct. 24, 2016, at 6-7, ECF No. 11).

violations" capable of sustaining plaintiff's otherwise untimely claims. The alleged coercion that occurred in 2010 falls outside the statute-of-limitations window, and the alleged refusal by the OAG to conduct a criminal investigation does not implicate any of the named defendants in conduct that would have violated plaintiff's constitutional rights.

For all the reasons discussed, the claims in Counts I through V are time-barred. Consequently, the claims against Tyler, Marks, Stoner, Schulder, and Dunnewold are independently subject to dismissal on this basis as well.

### D. Plaintiff's Claims Against the Bureau, the Board, and Heckler

#### 1. Failure to Satisfy Federal Pleading Standards

The complaint also names as defendants the Pennsylvania Bureau of Professional and Occupational Affairs (previously referred to as the "Bureau"), the State Board of Psychology (previously referred to as the "Board"), and Heckler, formerly the chairman of the Pennsylvania Child Protection Task Force. None of plaintiff's five causes of action are specifically directed against these defendants, and the complaint makes only scant reference to them. With regard to Heckler, plaintiff offers only the random averment that "Heckler and other DA's were '. . . acknowledging Kane's suspension could have a ripple effect on the courts.[']" (Compl. ¶19 (ellipsis in the original).) As for the Bureau and the Board, plaintiff alleges only that he has

> file[d] this action under 42 USC 1983 for recent continuing violations related [to] on going [sic] misconduct by all officials in their individual and professional capacities under color of state law (up to and including the present date) by both the Bureau of Professional and Occupational Affairs, State Board of Psychology (Pennsylvania Board of Psychology), collectively and individually, as well as the named defendants, including but not limited to all of [sic] have committed violations to retaliate against Plaintiff, or obstruct justice, based solely on Singer's mandated report of suspected child abuse and his subsequent refusal to admit any wrongdoing in the matter.

(Compl. ¶1.) Elsewhere in the complaint, plaintiff vaguely references certain orders that the Board allegedly issued in 1990. (See Compl. ¶¶ 43, 44, 55, 56.) The only other averments that are even remotely related to the Board are those concerning alleged misconduct on the part of Schulder while acting as the Board's counsel.

Plaintiff's "claims" against Heckler, the Bureau, and the Board are patently insufficient to state a basis for §1983 liability. With respect to Heckler, no misconduct was alleged at all. With regard to the Bureau, plaintiff proffered only a conclusory averment that the Bureau or its officials "committed violations to retaliate against Plaintiff, or obstruct justice . . . ." (Compl. ¶1.) Without additional factual content to support a plausible violation of federal law, the claim against the Bureau must be dismissed, as it fails to satisfy federal pleading standards. As for the Board, assuming for the sake of argument that it could be considered a "person" potentially liable under §1983,[8] plaintiff would have to allege more than simply misconduct on the part of one of its agents. Because §1983 does not create liability on the basis of *respondeat superior,* plaintiff has to allege facts showing that some policy or custom of the Board was the moving force behind his constitutional injury. *See generally Monell v. Dep't of Soc. Servs. of N.Y.,* 436 U.S. 658, 691 (1978). Here, plaintiff failed to allege either a constitutional injury or a policy or custom that was the "moving force" behind such injury. Consequently, plaintiff's claims against the Bureau, the Board, and Heckler are insufficiently pled.

## 2. Res Judicata

Assuming *arguendo* that plaintiff's §1983 claims are predicated upon events related to his license suspension and his unsuccessful attempts to rectify the allegedly wrongful

---

[8] It is not presently clear whether the Board is an "arm" of the Commonwealth but, if it is, Eleventh Amendment immunity would protect it from liability for monetary damages. Conversely, if the Board is a private entity that did not operate "under color of state law," it cannot be liable under §1983.

suspension, the claims against the Bureau and the Board are barred by res judicata. Under federal law, the doctrine of res judicata applies when three circumstances are present: "'(1) a final judgment of the merits in a prior suit involving; (2) the same parties or their privies; and (3) a subsequent suit based on the same causes of action.'" *Catanzaro v. Davis*, No. 15-4088, --- F. App'x ---, 2017 WL 1373274, at *1 (3d Cir. Apr. 13, 2017) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 260 (3d Cir. 2010)). When applicable, "[t]he doctrine of res judicata bars not only claims that were brought in a previous action, but also claims that could have been brought." *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008) (citing *Post v. Hartford Ins. Co.*, 501 F.3d 154, 169 (3d Cir. 2007). In this way, it "'protect[s] litigants from the burden of relitigating an identical issue with the same party or his privy and ... promot[es] judicial economy by preventing needless litigation.'" *Id.* (quoting *Post,* 501 F.3d at 169 (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 (1979))) (alterations and ellipsis in the original).

This lawsuit constitutes at least the third civil action in which plaintiff has sued the Bureau or the Board under 42 U.S.C. §1983. *See Singer v. Bureau of Prof'l & Occupational Affairs* (previously referred to as "*Singer VI*")*,* No. 3:12–CV–00527 (M.D. Pa. filed Mar. 23, 2012); *Singer v. Bureau of Prof'l and Occupational Affairs* (previously referred to as "*Singer VII*"), No. 3:CV–13–3059 (M.D. Pa. filed Dec. 19, 2013). The claims in *Singer VI* were dismissed as untimely – a result which constitutes a merits-based disposition for res judicata purposes. *See Singer VI,* 2012 WL 5879729, at *1 (M.D. Pa. Nov. 21, 2012) (dismissing claims on statute of limitations grounds), *aff'd*, 523 F. App'x 185, 187 (3d Cir. 2013); *see also Singer VII,* 2014 WL 2048159, at *8 (M.D. Pa. May 16, 2014) ("A dismissal on statute of limitations grounds is a dismissal on the merits for res judicata purposes.") (internal quotation marks omitted; citing decisions). Thus, the first two criteria for res judicata are satisfied here.

With respect to the third res judicata criterion – *i.e.,* identity of claims as between the current and prior lawsuits, "the analysis does not rest on the specific legal theories invoked, but rather it turns on 'the essential similarity of the underlying events giving rise to the various legal claims.'" *Singer VII,* 2014 WL 2048159, at \*9 (quoting *Davis v. U.S. Steel Supply*, 688 F.2d 166, 171 (3d Cir. 1982)). "In conducting this inquiry, the analysis focuses on 'whether the acts complained of were the same, whether the material facts alleged in each suit were the same, and whether the witnesses and documentation required to prove such allegations were the same.'" *Id.* (quoting *Lubrizol corp. v. Exxon Corp.,* 929 F.2d 960, 963 (3d Cir. 1991). In *Singer VII,* the court found that the criterion was satisfied because, in both the pending and prior lawsuits:

> Singer's claims against the Bureau and the Board [were] based on their conduct of administrative proceedings against him, leading to the suspension of his professional license in 1992. In both actions, Singer alleged generally that the Bureau and the Board have refused to reinstate his professional license in the years since then. In both actions, he further alleged facts regarding his efforts to obtain redress from the Offices of the Governor and the Attorney General of Pennsylvania between 2007 and 2010, the failure of which he appears to imply was somehow caused by a conspiracy involving the Bureau and the Board.

*Singer VII*, 2014 WL 2048159, at \*9.

In this case, as noted, plaintiff's allegations against the Bureau and the Board are scant and conclusory. As best this court can tell, however, plaintiff's claims -- like his claims in *Singer VI* and *Singer VII* – arise from his 1992 license suspension and his unsuccessful attempts thereafter to effectuate an official investigation of, and criminal charges against, his alleged retaliators and their conspirators. As in *Singer VI and VII,* plaintiff appears to be asserting that his failure to obtain administrative redress stems from some form of coordinated misconduct by and among the various defendants. Thus, plaintiff's claims in this case, to the extent they are discernable, arise from the same underlying events that gave rise to his previous §1983 claims.

Because plaintiff's claims against the Bureau and the Board either (a) were previously litigated or (b) could have been litigated in his prior lawsuits, they are now barred by res judicata.

Plaintiff's claims against Heckler are similarly barred by res judicata. Plaintiff previously sued Heckler, along with other members of the Task Force, in *Singer VIII*. *See Singer v. Heckler,* Case No. 2:14-cv-1598 (W.D. Pa. filed Nov. 21, 2014). On December 16, 2015, this court dismissed the operative complaint in *Singer VIII* pursuant to 28 U.S.C. §1915(e)(2)(B) because the complaint failed to state any claim upon which relief could be granted. *See id.* (ECF Nos. 19 and 20). The court subsequently denied plaintiff's motions for reconsideration and to reopen the case. *See id*. (ECF Nos. 34 and 35). Thus, the first two requirements for res judicata are satisfied here.

The third requirement – *i.e.,* that the claims in both lawsuits be identical -- is also satisfied. In *Singer VIII,* plaintiff predicated his §1983 claims on alleged violations of his due process, equal protection, and free speech rights. These claims, in turn, were grounded on plaintiff's theory that Heckler should have done more in his capacity as Chairman of the Pennsylvania Child Protection Task Force to remediate the injustice that occurred when plaintiff was allegedly retaliated against for reporting child abuse. The court determined that Heckler's involvement on the Child Protection Task Force did not give rise to §1983 liability for any of the constitutional torts alleged. *See Singer VIII,* No. CV 14-1598, 2015 WL 8992438 (W.D. Pa. Dec. 16, 2015), *reconsideration denied*, 2016 WL 397468 (W.D. Pa. Feb. 2, 2016). As noted, the complaint in this case makes only a scant passing reference to Heckler, so the alleged basis for Heckler's liability is not clear. Nevertheless, it is apparent that any claims asserted against Heckler in this case would necessarily arise from the same underlying events that gave rise to plaintiff's previous §1983 claims. Because res judicata bars both claims that were previously

litigated and also any claims that *could have been raised* in plaintiff's prior lawsuit, *CoreStates Bank, N.A. v. Huls Am., Inc.,* 176 F.3d 187, 194 (3d Cir. 1999); *Singer VII,* 2014 WL 2048159, at *9, plaintiff's claims against Heckler are now precluded.

In sum, even under the most generous construction, the complaint asserts claims against the Bureau, the Board, and Heckler that are barred by res judicata. Insofar as this lawsuit involves "[r]epetitious litigation of virtually identical causes of action" that were previously asserted, plaintiff's complaint is subject to dismissal on the basis of frivolousness. *See Banks,* 568 F. Supp. 2d at 589.

### E. Further Amendment

The Court of Appeals for the Third Circuit has instructed that, if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). In this case, the complaint suffers from numerous deficiencies, none of which are capable of being remedied through further amendment. Plaintiff has already attempted to state a viable claim in several different lawsuits, each of which has been dismissed. Notwithstanding these multiple attempts to state a claim, plaintiff has been unable to successfully do so. Dismissal without further leave to amend is therefore appropriate, because allowing plaintiff to amend his pleadings clearly would be futile.

### V. Conclusion

For the foregoing reasons, pursuant to 28 U.S.C. § 1915(e)(2)(B), this court is compelled to dismiss plaintiff's complaint. Because further amendment would be futile, the dismissal will be with prejudice.

An appropriate order will be entered contemporaneously with this opinion.

Dated: June 6, 2017                                    /s/ Joy Flowers Conti
                                                       Joy Flowers Conti
                                                       Chief United States District Judge